**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MAXIE SMITH,

    Petitioner,

v.                                                    Case No. 8:02- CV-1988-T-30EAJ

JERRY G. RABION, et al.,

    Respondents.

_____/

## **O R D E R**

Petitioner, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner is challenging his 1999 convictions for burglary of a dwelling, battery on a Law enforcement officer, and obstructing or opposing an officer with violence entered by the Thirteen Judicial Circuit Court, Hillsborough County, Florida. Respondent has filed a response to the petition (Dkt. 12), and Petitioner has filed a reply thereto (Dkt. 14). The matter is now before the Court for consideration of the merits of the petition.

### **Background**

Represented by counsel (Dkt. 1 at 16), Petitioner proceeded to a trial by jury. During the trial, Petitioner sought and was granted leave to represent himself with the aid of standby counsel (Dkt. 12, Ex. 16, Vol. III at Tr. 140). The jury returned a verdict of guilty as charged, and on January 20, 1999, the trial court sentenced Petitioner as a violent career criminal and

prison releasee reoffender[1] to imprisonment for a term of 40 years on Count One, with the stipulation that after Petitioner serves 30 years in prison, the balance of the sentence would be suspended, and Petitioner would be placed on probation for a period of 5 years, and on Counts Two and Three to imprisonment for a term of 15 years, with a 10-year minimum mandatory term, with all sentences to run concurrently (Dkt. 12, Ex. 16, Vol. I at R. 54-67).

The special assistant public defender appointed to represent Petitioner on direct appeal raised the following two issues:

1. The trial court erred in failing to sustain appellant's objection to a peremptory juror strike made by the state because no proper racially-neutral reason was given; and

2. The trial court erred in failing to grant a mistrial or give a curative instruction following the prosecutor's improper remarks in closing argument.

Dkt. 12, Ex. 1.  On May 5, 2000, the state appellate court filed a written opinion affirming the convictions and sentences (Dkt. 12, Ex. 3).  *See Smith v. State*, 758 So.2d 1186 (Fla. 2 DCA 2000).  The mandate issued on June 8, 2000 (Dkt. 12, Ex. 4).

---

[1]The Court takes judicial notice of information available at the Florida Department of Corrections Information Network, http://www.dc.state.fl.us/, viewed December 11, 2005.  *See* Fed. R. Evid. 201. Following his convictions in Martin County, Florida, of burglary of a dwelling and robbery, Petitioner was sentenced on September 17, 1990 to a serve a 14-year term of imprisonment. Petitioner was placed in the custody of the Florida Department of Corrections on October 3, 1990, where he remained until his release on July 1, 1996. The burglary and robbery that are the subject of the instant petition occurred on April 20, 1998.

Under Florida law, a "'[p]rison releasee reoffender' means any defendant who commits, or attempts to commit: . . . (o) Any felony that involves the use or threat of physical force or violence against an individual; . . . q. Burglary of a dwelling or burglary of an occupied structure; . . . within 3 years after being released from a state correctional facility operated by the Department of Corrections. . . . following incarceration for an offense for which the sentence is punishable by more than 1 year in this state. . . . 3. If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., [sic] the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows: (a) For a felony punishable by life, by a term of imprisonment for life; (b) For a felony of the first degree, by a term of imprisonment of 30 years. . . . (b) A person sentenced under paragraph (a) shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release.  Any person sentenced under paragraph (a) must serve 100 percent of the court-imposed sentence." Fla. Stat. Section 785.082(8)(a)(1) (1997).  *See also Clark v. State*, 790 So.2d 1030 (Fla. 2001).

2

Petitioner's request for discretionary review was denied by the Florida Supreme Court on October 13, 2000, when the court declined to accept jurisdiction (Dkt. 12, Ex. 7). *Smith v. State*, 773 So.2d 57 (Fla. 2000) (table decision).

On October 11, 2001, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. Proc. 3.850.  In his motion, Petitioner asserted that (1) his right to effective assistance of counsel was violated when trial counsel: (a) failed to file a motion to suppress Defendant's identification from an unlawful arrest; (b) gave up Defendant's innocence during closing argument without his consent; (c) failed to suppress the confession from an illegal arrest; and (d) failed to call and depose a material witness; and (2) the trial judge violated Defendant's right to due process and his Sixth Amendment rights during trial. The trial court entered a written order denying Petitioner's Rule 3.850 motion. On September 13, 2002, the state appellate court filed an unwritten per curiam opinion affirming the trial court's order (Dkt. 12, Ex. 12), with the mandate issuing on November 5, 2002, *see* Dkt. 12, Ex. 15.  *See Smith v. State*, 833 So.2d 136 (Fla. 2d DCA  2002).

Petitioner filed his federal habeas petition on March 13, 2003 (Dkt. 1).  In his petition, Petitioner asserts the following claims for relief:

1. The trial court erred in failing to sustain objection to a peremptory juror strike made by the state because no proper racially-neutral reason was given;

2. Defense counsel violated petitioner's federal constitutional rights by denying him a right to effective assistance when he surrendered petitioner's innocence without his consent; and

3. The trial court violated petitioner's due process and Sixth and Fourteenth Amendment rights by allowing him to represent himself.

The claims are exhausted for federal habeas corpus purposes. Nevertheless, Respondent argues, Petitioner is not entitled to relief in this Court because the claims fail to satisfy the

3

threshold requirement of 28 U.S.C. § 2254(d) and (e).  Having reviewed the record, the parties arguments, applicable statutes, and controlling case law,  for reasons set forth *infra*, the Court agrees.

## Standard of Review

Since Petitioner's conviction was entered after the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, his petition is subject to the provisions thereof. The standard of review required in a federal habeas corpus proceeding is quite strict, resulting in a heavy burden on the petitioner to successfully overturn a state court conviction. Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.  *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).  Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision.  *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).

In *Putman v. Head*, the Eleventh Circuit interpreted the § 2254 standard, stating:

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *See Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *See id.* An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* Notably, an "unreasonable application" is an "objectively unreasonable" application. *See Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.
>
> Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

268 F. 3d 1223, 1241 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002) (footnotes omitted). *See also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established federal law. *Mitchell v. Esparaza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme

5

Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)).

In addressing the level of deference a federal habeas court should accord the state court's decision under § 2254(d), the Supreme Court stated:

> A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. . . . [however], deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

*Miller-El v. Cockrell*, 537 U.S. 322 (2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted).

A state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). *See Henderson*, 353 F.3d at 890-91.

**Evidentiary Hearing**

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992). Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

6

**Discussion**

**Ground One**

In his first claim for relief, Petitioner contends that the trial court committed reversible error by allowing the prosecutor to exercise a peremptory challenge to remove an Hispanic person from the venire panel. Petitioner raised this claim on direct appeal. In rejecting the claim, the appellate court found as follows:

> Appellant, Maxie Smith, challenges his convictions and sentences for burglary of a dwelling, battery on a law enforcement officer, and obstructing an officer with violence. In support of his challenge, appellant raises two issues: (1) whether the trial court erred in failing to sustain appellant's objection to a peremptory juror strike; and (2) whether the trial court erred in failing to grant a mistrial or give a curative instruction following the prosecutor's improper remarks. We find no reversible error with either issue raised and affirm.
>
> During jury selection, appellant objected to the State's peremptory strike of a juror of Hispanic descent and asked for a race-neutral reason. In his response, the assistant state attorney adequately demonstrated his reasonable belief that the prospective juror's answers to voir dire questions demonstrated a bias that appeared to be favorable to appellant.

*Smith v. State*, 758 So.2d 1186 (Fla. 2 DCA 2000).

Under both Florida and federal law, there is an established three-step process for race-based objections to peremptory challenges: A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike. The burden of production then shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes

7

that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. *See Powers v. Ohio*, 499 U.S. 400, 415 (1991) (modifying *Batson* to allow defendants of races different than the excused jurors to have standing to raise *Batson* challenges); *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986); *Melbourne v. State*, 679 So.2d 759, 764 (Fla. 1996). The burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038-39 (11th Cir. 2005).

The primary responsibility for deterring discrimination in the jury selection process rests with the trial judge. *See Batson*, 476 U.S. at 97 ("We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."); *Rodriguez v. State*, 753 So.2d 29, 41 (Fla. 2000) (finding that it could not, "on a cold record, second-guess" how the venireperson responded to questions, the court stated that "[t]his is exactly the type of credibility assessment that must be made by the trial court and, on this record, we cannot say that the trial court's decision was clearly erroneous"). The parties do not dispute that trial counsel made a timely objection that was overruled by the trial court based on its finding that the prosecutor gave a facially race-neutral explanation for his decision to strike the venire person.

The prosecutor argued that his decision to strike the venire person was based on her responses to questions by defense counsel indicating a possible bias toward the defense (Dkt. 12, Ex. 16, Vol. V at Tr. 486-488). Petitioner argues that the trial court erred in finding that the prosecutor's explanation was race neutral.

8

Under AEDPA, deference is required as to every stage of the *Batson* analysis because *Batson* conclusions constitute fact-finding. *United States v. Allen-Brown,* 243 F.3d 1293, 1297 (11th Cir. 2001) ("[a] district court's finding as to why a juror is excused is an issue of fact"); *Dudley v. Wal-Mart Stores, Inc.,* 166 F.3d 1317, 1321 (11th Cir. 1999) ("A district court's *Batson* determinations are largely findings of fact entitled to great deference on review."); *Hollingsworth v. Burton,* 30 F.3d 109, 112 (11th Cir. 1994) ("[T]he trial court's finding of no discrimination is a fact finding."). Even without AEDPA's deferential standard of review, *Batson* instructs that the trial court's finding of no discrimination is entitled to great deference. *Batson,* 476 U.S. at 98, n. 21; *Hollingsworth*, 30 F.3d at 112.

The Court finds that the record supports the state court's finding that the prosecutor's peremptory challenge was race neutral, and Petitioner has failed to rebut the presumption of correctness accorded this finding by clear and convincing evidence. The Court further finds that Petitioner has failed to establish that the trial court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Thus, this claim lacks merit.

**Ground Two**

In Ground Two, Petitioner claims his attorney was ineffective for "surrendering Petitioner's innocence without his consent." Petitioner faults trial counsel's comment during closing argument that "there is no doubt that [Petitioner] is at the house. The footprints are right outside the window . . . . and we're conceding he was at the house" (Dkt. 12, Ex. 16, Vol. III at Tr. 218-19). Petitioner claims this was a concession of guilt without his consent, arguing that there was no evidence establishing that he was near the victim's house.

9

Because the claim was raised in Petitioner's Rule 3.850 motion, it is properly exhausted.

According to clearly established federal law enunciated by the United States Supreme Court, to establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

"To state the obvious: trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

The trial court evaluated Petitioner's ineffective assistance of counsel claims under the *Strickland* standard (Dkt. 12, Ex. 9 at 2). Petitioner argues that the trial court applied the wrong standard. According to Petitioner, his ineffective assistance of counsel claim must be reviewed under the standard enunciated by the Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984) ("If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."). First, it is clear that under the Supreme

Court's recent decision in *Florida v. Nixon*, this argument is unavailing to Petitioner's cause. *See Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 561-63 (Dec. 13, 2004). The *Nixon* court held that even where trial counsel, acting without the defendant's consent, admits his guilt during closing argument, so long as trial counsel does not "fail to function in any meaningful sense as the Government's adversary," her performance is subject to review under the *Strickland* standard, and prejudice must be proved. *Id.* Secondly, as discussed below, given the facts of the case, trial counsel cannot be found to be ineffective under either the *Cronic* or the *Strickland* test.

According to testimony adduced by the prosecutor, on April 20, 1998, around 11:00 a.m., someone broke a window located over the sink in the victim's kitchen, entered the residence, ransacked the house, and fled with pieces of costume jewelry and one of a pair of sneakers belonging to the victim's son. A bicycle that did not belong to the victim was discovered near the broken window, and the screen from the window was found nearby. Officers responding to the burglary in progress call testified that Petitioner was seen running between houses a short distance from the victim's residence (Dkt. 12, Ex. 16, Vol. II at Tr. 13-15). Office Carl Milillo testified that he gave chase on foot, and found Petitioner hiding behind an air conditioning unit on the side of a house (Dkt. 12, Ex. 16, Vol. II at Tr. 36-37).

Two officers testified that Petitioner resisted Officer Milillo's attempt to place him in custody. When he was eventually subdued, Petitioner was placed in the back of the patrol car, read his *Miranda* rights, and interviewed by Officer Milillo. According to Officer Milillo's testimony, Petitioner admitted going into the house, stating that a "young guy" who lived there gave him permission. Petitioner was, however, unable to provide the person's name (Dkt. 12, Ex. 16, Vol. II at Tr. 48-50).

Officer Milillo also testified that he located a black box containing jewelry inside the Petitioner's pants pocket (Dkt. 12, Ex. 16, Vol. II at Tr. 52). When shown a photograph of the jewelry box at trial, the victim testified that the box belonged to her husband (Dkt. 12, Ex. 16, Vol. II at Tr. 90).

The prosecution also presented testimony that several footprints were located in a large oil stain outside of the broken window, which was located in the carport area of the house. The footprints matched the shoes Petitioner was wearing at the time he was apprehended (Dkt. 12, Ex. 16, Vol. III at Tr. 149-150; 155), and a latent fingerprint lifted from the screen that had been removed from the broken window was found to positively match Petitioner's fingerprint (Dkt. 12, Ex. 16, Vol. III at Tr. 149; 164).

During closing arguments, trial counsel contended that when considered in its totality, this evidence merely showed that Petitioner walked on the carport <u>outside</u> the victim's residence. Trial counsel argued, however, that the State failed to adduce sufficient evidence to support it's theory that Petitioner actually <u>entered</u> the victim's residence. Thus, according to trial counsel, the jury could not find, beyond a reasonable doubt, that Petitioner committed the burglary (Dkt. 12, Ex. 16, Vol. III at Tr. 223).

The record supports the trial court's finding that Petitioner failed to establish that trial counsel's performance was deficient. Trial counsel did not concede that Petitioner had entered the house to commit a crime or for any other reason. Given that Petitioner's assertion that counsel conceded his guilt to the charged offense is contradicted by the record, he cannot meet either prong of the *Strickland* test.

The Court finds that Petitioner has failed to establish that the trial court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Thus, this claim lacks merit.

**Ground Three**

Petitioner alleges that the trial court violated his rights under the Sixth and Fourteenth Amendments by allowing him to represent himself at trial. The trial court treated this claim as one of ineffective assistance of counsel when it was raised in Petitioner's Rule 3.850 motion.[2] In rejecting the ineffective assistance of counsel claim, however, the trial court applied the standard set out by the Supreme Court in *Faretta v. California,* 422 U.S. 806 (1975), to the underlying substantive claim, finding that Petitioner voluntarily and knowingly waived his right to counsel when he asserted his right to self-representation (Dkt. 12, Ex. 9 at 13).

While "[t]he Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment," the Sixth Amendment also affords criminal defendants the right to defend themselves if they so desire. *Faretta v. California*, 422 U.S. at 807. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice

---

[2]Had the trial court construed Petitioner's claim as asserting a violation of the principles enunciated in *Faretta v. California*, 422 U.S. 806 (1975), the claim would have been subject to summary dismissal because under Florida law, that issue can only be raised on direct appeal. *See, e.g., Downs v. State*, 740 So.2d 506 (Fla. 1999) (holding that whether trial court failed to conduct adequate inquiry under *Faretta* should be raised on direct appeal, not in a post-conviction motion).

13

is made with eyes open." *Id.* at 835 (internal quotations and citation omitted).

A defendant must clearly and unequivocally assert the right to self-representation. *Raulerson v. Wainwright*, 732 F.2d 803, 808 (11th Cir. 1984). Although the trial court's conclusion that a defendant's waiver is valid -- that it is knowing, voluntary, and intelligent -- is a mixed question of law and fact, the trial court's findings of fact are entitled to great deference. *See* 28 U.S.C. § 2254(e). If the trial record shows that the Petitioner knowingly and voluntarily elected to represent himself, the *Faretta* standard is satisfied. *See Nelson v. Alabama,* 292 F.3d 1291, 1295 (11th Cir. 2002).

Petitioner does not assert that he was coerced into proceeding *pro se*, and in his reply, Petitioner acknowledges that during the *Faretta* colloquy, the trial court informed him of the risks of self-representation. He argues, however, that he "failed to invoke his right to represent himself in an unequivocal manner" (Dkt. 14 at 18).

The record reflects that Petitioner was represented by court-appointed counsel during jury selection and the testimony of the State's first three witnesses. At that time, trial counsel advised the trial court during a bench conference that Petitioner wished to represent himself (Dkt. 12, Ex. 16, Vol. II at Tr. 101).

Out of the presence of the jury, trial counsel and Petitioner were placed under oath, and the trial court judge conducted a *Faretta* hearing to determine whether Petitioner's assertion of the right to self-representation was a knowing and voluntary waiver of counsel (Dkt. 12, Ex. 16, Vol. II at Tr. 103-26). The trial court queried Petitioner regarding his age, health, and education; his knowledge of the nature of the charges and possible defenses and penalties; his understanding of the rules of evidence, procedure, and courtroom decorum; his experience in criminal trials; and whether anyone had attempted to influence him to

represent himself. *Id. See United States v. Kimball*, 291 F.3d 726, 731 (11th Cir. 2002).

Having warned Petitioner of the hazards of self-representation, the trial court asked him: "are you certain that you want this lawyer discharged and represent [sic] yourself?" When Petitioner responded, "I'm not really certain," the trial court queried him about his response. *See* Dkt. 12, Ex. 16, Vol. II at Tr. 116-120. Petitioner explained that he thought that he and trial counsel had agreed that Petitioner would write out questions for the witnesses and pass them to trial counsel for use during cross-examination. Petitioner became concerned when trial counsel refused on several occasions to ask Petitioner's question. *Id.*

Without discussing specifics of the case, trial counsel explained on the record that several of the questions Petitioner wanted him to ask were not allowed under the rules of evidence. Trial counsel also stated that he refused to ask several other questions proffered by Petitioner because he did not have a good faith basis for asking the questions (Dkt. 12, Ex. 16, Vol. II at Tr. 121-22). The trial court then explained to Petitioner that trial counsel was precluded from asking certain questions under the rules governing criminal trials and how trial counsel's decision whether to proffer a question was also influenced by concerns about opening the door to other issues the prosecution might raise which would be unfavorable to the defendant and the defense strategy.

Petitioner was then given an opportunity to consult with trial counsel before a ruling was made on his request to proceed *pro se* (Dkt. 12, Ex. 16, Vol. II at Tr. 124). When the hearing resumed, Petitioner informed the trial court in clear and unambiguous terms that he had made a decision, stating unequivocally: "at this time, I'd like to let the Court know that I'm going to represent myself." *Id.* Trial counsel advised the trial court: "we've had a

15

discussion and [Petitioner] has indicated quite vociferously that he wishes to represent himself against my advice" (Dkt 12, Ex. 16, Vol. II at Tr. 125). The trial judge then ruled that Petitioner would be allowed to represent himself, with his court-appointed attorney serving as "stand-by" counsel (Dkt. 12, Ex. 16, Vol. II at Tr. 124-26).

Trial counsel then assisted Petitioner during the review of the proposed jury (Dkt. 12, Ex. 16, Vol. II at Tr. 130). When the jurors returned to the courtroom, the trial court advised them that Petitioner would be representing himself (Dkt. 12, Ex. 16, Vol. III at Tr. 140). Petitioner called two officers who arrived at the crime scene in response to the burglary in progress call as witnesses and recalled the arresting officer (Dkt. 12, Ex. 16, Vol. III at Tr. 179-202). Having been advised on the record of his right to testify, Petitioner declined to take the stand (Dkt. 12, Ex. 16, Vol. III at Tr. 205-06). After Petitioner rested his case, he requested that trial counsel give the closing argument (Dkt. 12, Ex. 16, Vol. III at Tr. 206-07).

"The purpose of a *Faretta* inquiry is not to determine the extent of a defendant's legal knowledge or to determine how good of a trial advocate a defendant will be." *United States v. Kimball*, 291 F.3d at 731. The court need only determine whether the defendant "understood that rules do exist to govern the procedure of a trial, the introduction of evidence and the behavior of advocates and to determine whether [he] understood that he would be bound by those rules." *Id.*

The transcript supports the trial court's finding that Petitioner knowingly and intelligently "chose to waive his right to have an attorney represent him" (Dkt. 12, Ex. 9 at 11-13). To the extent that the reply may be read to assert that Petitioner was incompetent to represent himself when he requested to proceed *pro se*, this claim likewise lacks merit. Petitioner's testimony during the *Faretta* inquiry was, to the contrary, coherent, logical, and

16

relevant to the questions asked of him (Dkt. 12, Ex. 16, Vol. II at Tr. 103-126).

The Court finds that Petitioner's claim that his Sixth and Fourteenth Amendment rights were violated when the trial court permitted him to represent himself at trial is contradicted by the record. Petitioner has not rebutted the presumption of correctness accorded the trial court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court further finds that the trial court's decision on this issue is not contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief. Petitioner merely repeats the argument made to the state court and hopes this Court will construe the facts differently. Such is not the role of the district court in reviewing a federal habeas petition.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).
2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on December 19, 2005.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties of Record
SA:jsh